UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAURA SPEAR,                                                    REPORT
                                                                 and
                              Plaintiff,              RECOMMENDATION
                v.                                    ----------------------------
                                                             DECISION
CITY OF BUFFALO, BUFFALO POLICE                               and
DEPARTMENT, OFFICER JEROME                                   ORDER
HAZLETT, and OFFICER FRANKLYN E. KING,
                                                        11-CV-00012A(F)
                              Defendants.
_____

APPEARANCES:        HOGAN WILLIG
                    Attorneys for Plaintiff
                    STEVEN M. COHEN, and
                    JEFFREY B. NOVAK, of Counsel
                    2410 North French Road
                    Suite 301
                    Getzville, New York  14068

                    TIMOTHY A. BALL
                    CORPORATION COUNSEL, CITY OF BUFFALO
                    Attorney for Defendants
                    ROBERT EMMET QUINN, Assistant Corporation Counsel
                    1103 City Hall
                    65 Niagara Square
                    Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on

February 18, 2011, for pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Defendants' motion for judgment on the pleadings and for summary judgment (Doc. No.

28), and on Plaintiff's cross-motion for leave to file a further amended complaint (Doc. No. 31).[1]

## BACKGROUND

Plaintiff Laura Spear ("Plaintiff" or "Spear"), commenced this civil rights action seeking to recover money damages from Defendants City of Buffalo ("City"), Buffalo Police Department ("Buffalo Police"), and Buffalo Police Officers Jerome J. Hazlett ("Officer Hazlett"), and Franklyn E. King ("Officer King") (together, "Defendants'), for alleged violations of her constitutional rights in connection with an incident occurring October 21, 2009 ("the incident"), in which Plaintiff allegedly was assaulted by Officer Hazlett while Officer King  failed to intervene to stop the assault.  On April 29, 2011, Plaintiff filed an amended complaint (Doc. No. 12) ("Amended Complaint"),[2] asserting six claims for relief including (1) excessive force against Officer Hazlett and failure to intervene against Officer King; (2) deprivation of due process and failure to provide medical attention against Defendants; (3) deprivation of liberty without due process of law against Defendants; (4) negligent hiring, training, and supervision against Defendants City and Buffalo Police; (5) common law battery against Defendants City, Buffalo Police, and Officer Hazlett; and (6) common law false arrest/false imprisonment against Defendants City, Buffalo Police, and Officer Hazlett.  In their Answer, filed May 13, 2011 (Doc. No. 14) ("Answer"), Defendants assert 15 affirmative defenses including,

---

[1] Although Defendants' motion seeking dismissal for failure to state a claim and summary judgment, is dispositive, whereas Plaintiff's motion to amend is nondispositive, both motions are addressed in this combined Report and Recommendation and Decision and Order in the interests of clarity and judicial economy.
[2] Because ¶ 73 was partially omitted from the Amended Complaint, it was refiled on August 24, 2011 (Doc. No. 19).

*inter alia*, the Amended Complaint fails to state a claim.  Answer, Thirteenth Affirmative Defense.

On December 14, 2012, Defendants filed a motion (Doc. No. 28) ("Defendants' Motion"), seeking judgment on the pleadings dismissing claims against Defendants City and Buffalo Police and summary judgment on the same claims.  Defendants' Motion is supported by the attached Declaration of Assistant Corporation Counsel Robert E. Quinn (Doc. No. 28-1) ("Quinn Declaration"), exhibits A through C (respectively, Docs. Nos. 28-2 through 28-4) ("Defendants' Exh(s). __"), and the Memorandum of Law in Support of Defendants' Motion (Doc. No. 28-5) ("Defendants' Memorandum").  On February 4, 2012, Plaintiff filed Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings and/or Motion for Summary Judgment (Doc. No. 30) ("Plaintiff's Response"), as well as a cross-motion to file a further amended complaint (Doc. No. 31) ("Plaintiff's Motion"), supported by the attached Memorandum of Law in Support of Plaintiff's Motion to Amend the Complaint (Doc. No. 31-1) ("Plaintiff's Memorandum"), and the Declaration of Steven M. Cohen, Esq. (Doc. No. 31-2) ("Cohen Declaration"), to which is attached as exhibit A the Proposed Second Amended Complaint (Doc. No. 31-3) ("Proposed Second Amended Complaint").  On February 25, 2013, Defendants filed a Memorandum of Law in Opposition to Plaintiff's Motion to Amend (Doc. No. 33) ("Defendants' Response"), and the Reply Memorandum of Law in Further Support of Defendants' Motion for Dismissal and Summary Judgment (Doc. No. 34) ("Defendants' Reply").  On March 8, 2013, Plaintiff filed the Memorandum of Law in Further Support of Plaintiff's Motion to Amend the Complaint (Doc. No. 36) ("Plaintiff's Reply"), attaching the Attorney Declaration of

Jeffrey B. Novak, Esq. (Doc. No. 36-1) ("Novak Declaration"), with exhibits A through F (respectively, Docs. Nos. 36-2 through 36-7) ("Plaintiff's Exh(s). __"). Oral argument was deemed unnecessary.

Based on the following, the claims against Defendant Buffalo Police should be DISMISSED; Defendants' Motion should be GRANTED in part and DISMISSED as moot in part; Plaintiff's Motion is DENIED.

### FACTS[3]

On Wednesday, October 21, 2009, Plaintiff Laura Spear ("Plaintiff" or "Spear"), was at work at Buffalo Auto Recovery Service ("Buffalo Auto Recovery" or "the business office"), an automobile repossessing business, located at 76 Roberts Avenue, in Buffalo, New York, where Plaintiff was employed full-time as a secretary responsible for coordinating the repossession of automobile vehicles, including telephone calls, account data input for repossessions, billing, and scheduling. On Wednesday, October 21, 2009, a debtor whose vehicle had been repossessed by Buffalo Auto Recovery ("the debtor"), arrived at the business office after 3:00 P.M. seeking to retrieve personal belongings that were in his vehicle when it was possessed. Because the business office was open for debtor business only on weekdays between 10:00 A.M. and 3:00 P.M., the debtor called the business office where Plaintiff answered the telephone and explained the business office was closed, instructing the debtor to return during regular business hours to retrieve his personal belongings. According to Plaintiff, it was Buffalo Auto Recovery's policy that no debtor was allowed access to a repossessed vehicle outside of the business office's regular hours, and before obtaining access to a vehicle,

---

[3] Taken from the pleadings and motion papers filed in this action.

the debtor was required to present identification and papers establishing the debtor's legitimate ownership interest in the repossessed vehicle.  After being denied entry to the business office, the debtor called the Buffalo Police and reported Plaintiff was denying him access to his personal property, subsequent to which Officer Hazlett arrived in a police vehicle at the business office where the debtor was outside waiting.  After the debtor spoke to Officer Hazlett, Hazlett approached a secured, exterior door to the business office, where he was greeted by a repossession agent, Jon Frank ("Frank") who advised that because business hours for the day had ended, the debtor would have to return the next day to retrieve his personal belongings.  In response to Officer Hazlett's demand, Frank provided the keys to the business office, and Officer Hazlett let himself in, ascended the stairs, opened a door and entered an office ("the office"), in which Plaintiff and Frank's wife, Erica Frank ("Erica Frank"), the secretary in charge, were working.

Officer Hazlett allegedly accused Plaintiff and Erica Frank of playing games with the debtors and demanded the return of the debtor's personal belongings.  When Plaintiff and Erica Frank attempted to explain to Officer Hazlett that personal belongings from repossessed vehicles could only be retrieved during the business office's regularly scheduled hours, Officer Hazlett stated he did not want to listen, and directed Plaintiff to "[g]et up off your fat ass and get this guy his stuff back."  Plaintiff's EBT Tr.[4] at 13. Plaintiff responded that it was not her job to retrieve personal belongings from repossessed vehicles, and that Erica Frank would explain the procedures to Officer Hazlett, who responded by repeating his crass demand to Plaintiff.  *Id.* at 14.  Erica

---

[4] References to "Plaintiff's EBT Tr." are to the page of the transcript of Plaintiff's examination before trial ("EBT"), a copy of which is filed as Plaintiff's Exh. B.

Frank announced she was going to call Buffalo Auto Recovery's main office to report a problem with a police officer. Officer Hazlett repeated his demand that Plaintiff "get up, get off your ass," then lunged at Plaintiff, yelling in Plaintiff's face and placing his hands on top of Plaintiff's arms that were lying on the arms of the office chair in which Plaintiff was seated. *Id.* at 14-15. Plaintiff complained that Officer Hazlett was spitting in her face, requesting Hazlett back off, but Hazlett responded by inquiring whether Plaintiff intended to hit him. *Id.* at 15. When Plaintiff denied planning to hit him, Officer Hazlett grabbed Plaintiff's arms, lifting them off the chair's arms, and yelled he was going to arrest Plaintiff and the other Buffalo Auto Recovery employees and extort money from them. *Id.* at 16. When Plaintiff complained that Officer Hazlett was hurting her arms, Hazlett allegedy pushed Plaintiff into a filing cabinet, spun her around attempting to pin Plaintiff's arms behind her back, and flipped Plaintiff around, all while Plaintiff screamed for help and attempted to stand up straight and regain her balance. *Id.* at 17. Hazlett then placed Plaintiff's arms behind her and threw Plaintiff over a facsimile machine, insisting he intended to arrest Plaintiff. *Id.* When Plaintiff continued to complain Hazlett was hurting her, Hazlett lifted her by an arm so that Plaintiff was looking over Hazlett's shoulder, and saw Officer King at whom Plaintiff screamed for help, but Officer King shook his head no and exited the room.[5] *Id.* at 18-19.

Officer Hazlett, holding Plaintiff by her arms, swung Plaintiff toward the desk of Erica Frank who fled the office, eliciting from Hazlett an order to stay put or she would be "next." Plaintiff's EBT Tr. at 19. Erica Frank, however, did not comply with Hazlett's order. With Hazlett still holding her arms behind her back and asserting he intended to

---

[5] Because Plainitff did not see Officer King enter her office, Plaintiff does not know when he arrived at the scene. Plaintiff's EBT Tr. at 19.

arrest them, Plaintiff hit her chest against Erica Frank's desk.  *Id.*  Plaintiff again asked Hazlett to release her, and Hazlett did, causing Plaintiff to stumble into a wall.  *Id.* Officer Hazlett then left the office, and Plaintiff picked herself up from the floor, at which time Erica Frank returned to the office, ran to the door and locked it, leaving Plaintiff and Erica Frank alone in the second floor office.  *Id.* at 20.  Plaintiff told Erica Frank she was not feeling well, complaining of back pain in her neck, back, and left side, and difficulty breathing, and needed help, and Erica Frank responded by telephoning Buffalo Auto Recovery's main office, while Plaintiff telephoned Erica Frank's father, Tim Hunter ("Hunter"), who owned Buffalo Auto Recovery, explaining she had been beaten up by a Buffalo Police Officer and needed help.  Hunter placed an emergency telephone call to 911, requesting an ambulance and a response by the fire department.  *Id.* at 20-21. Plaintiff was never charged with any crime, taken into custody, or handcuffed.

Erica Frank left the office and went downstairs to retrieve the personal belongings for the debtor, returning to the second-floor office a few minutes later and remained there with Plaintiff until Hunter arrived.  Upon arriving at the business office, Hunter asked what happened and was upset that no emergency responders had yet arrived.  Frank then explained that after Officer Hazlett exited the office, Frank, who was outside, observed that Hazlett heard on the police radio that an ambulance and fire department were being dispatched to 76 Roberts Avenue, at which point Hazlett, through the police radio, conveyed that he was at the scene for which emergency help had been requested, but no emergency responders were needed.[6]  *Id.* at 21-22.  Hunter telephoned 911 and inquired what had happened to the emergency dispatch that had

_____

[6] Officer King testified at his examination before trial that he, rather than Officer Hazlett, canceled the 911 emergency response request.  Officer King EBT Tr. (Defendants' Exh. B), at 52-53.

been requested, and the 911 operator told Hunter he could obtain answers from Buffalo Police A District where Hunter could file a complaint.  *Id.* at 22.  It was decided all four would go to A District, with Plaintiff riding in the vehicle driven by Erica Frank, and Hunter and Frank driving in a separate vehicle.

Upon their arrival at A District, Hunter approached the reception window, advising he wished to file a complaint regarding what had transpired at the Buffalo Auto Recovery's business office, including that one of his employees was "roughed up."  Plaintiff's EBT Tr. at 23.  Buffalo Police Lieutenant Wainwright ("Lt. Wainwright"), spoke with Hunter, advising Officer Hazlett was off duty, did not report to Wainwright and, as such, it was not Wainwright's "problem."  *Id.*  According to Plaintiff, Wainwright then pointed at Plaintiff, stating Plaintiff should have been arrested.  *Id.* at 23-24.  Plaintiff then inquired why a police officer beat her up, to which Lt. Wainwright responded that he did not know, but he had nothing to do with it.  *Id.* at 24.  When Plaintiff continued to ask why Hazlett had canceled the emergency call, Wainwright stated it was obvious Plaintiff did not need emergency help because she had managed to get to the police station, so she could get herself to the hospital.  *Id.*

After leaving the police station, Erica Frank drove Plaintiff to St. Joseph's Hospital ("the Hospital") in Cheektowaga, New York, where Plaintiff sought treatment at the emergency room.  X-rays revealed some swelling in Plaintiff's back for which Lortab was prescribed.  In accordance with the Hospital's directions, Plaintiff sought follow-up treatment the following Tuesday at Immediate Care, where Plaintiff was treated by Dr. Kerr who continued Plaintiff's Lortab, advising she wanted to watch Plaintiff for a week and hoped the problem was only muscular and would resolve itself with rest.  Two

weeks later, when Plaintiff's back pain did not subside, she again sought treatment from

Dr. Kerr who continued Lortab and prescribed physical therapy, which Plaintiff attended

only twice before pain caused her to stop.  Plaintiff returned to Dr. Kerr who then

referred Plaintiff to Dr. McAdam, a spine specialist, who ordered an MRI of Plaintiff's

spine.  The MRI, taken in November 2009, showed three damaged discs, which Dr.

McAdam treated with pain medications Tramadol and Neurontin, and physical therapy.

Several days after the incident, Plaintiff filed a complaint at Buffalo Police

Headquarters, following which a Lieutenant McLaughlin from Buffalo Police Professional

Standards Division ("PSD") went to Plaintiff's house to interview Plaintiff.  Plaintiff's EBT

Tr. at 31-33.  Plaintiff was off work for four days following the alleged assault, after

which her employment was terminated.[7]   Mr. Hunter never contacted Plaintiff in

connection with any investigation of the incident.

On April 23, 2012, Plaintiff underwent a surgical procedure of her cervical spine –

a discectory – which involved removing a piece of bone from Plaintiff's hip used to graft

two cervical discs together.  The procedure, performed by Dr. Hamill, an associate of

Dr. McAdam, was successful in alleviating Plaintiff's migraine headaches.  Another

discectomy was planned for two more of Plaintiff's cervical discs.

Plaintiff describes her continuing pain as on her left side, radiating from below

her rib cage to her head.  The pain interferes with Plaintiff's performance of such

household chores as vacuuming, laundry, and caring for her pets, and recreational

activities including horseback, motorcycle and bike riding, recreational walks, jet skiing,

and swimming.  Plaintiff also continues to suffer from headaches, memory loss,

---

[7] Plaintiff attributes her termination of employment to a lack of work, rather than her injuries.

disorientation, dizziness, and insomnia, all of which she attributes to the alleged assault

by Officer Hazlett.

## **DISCUSSION**

### 1.    **Relief Requested by the Instant Motions**

Defendants move pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings

and summary judgment on all claims civil rights claims against Defendant City and all

claims against Defendant Buffalo Police ("Moving Defendants").  The gist of Defendants'

argument is that Plaintiff cannot establish municipal liability based *on respondeat*

*superior* with regard to the First, Second, Third, Fifth, and Sixth Claims for Relief

because Plaintiff has failed to allege any facts or to produce any evidence establishing

Moving Defendants had in place a custom or policy causing or tolerating the

constitutional violations to which Plaintiff alleges she was subjected during the October

21, 2009 incident.  Defendants' Memorandum at 5-9.  With regard to Plaintiff's Fourth

Claim for Relief alleging negligent hiring, training and supervision, Defendants argue

such common law claim requires the Moving Defendants be operating outside the

scope of employment when committing the alleged tort whereas Plaintiff alleges the

common law torts occurred while Defendants were acting within the scope of their

employment.  *Id.* at 9.  Finally, Defendants argue that because Defendant Buffalo

Police, as an administrative arm of Defendant City, does not have a legal identity

separate and apart from the City, Buffalo Police cannot be sued.  *Id.* at 10.

In opposition to Defendants' Motion, Plaintiff references ¶ 14 of the Amended

Complaint which alleges Moving Defendants maintained a policy and custom tolerating

the use of force when investigating business disputes.  Plaintiff's Response at 6.

Otherwise, Plaintiff draws the court's attention to numerous factual allegations that Plaintiff maintains establish the behavior of Defendants Officers Hazlett and King was considered acceptable standard procedure, *id.* at 6-9, and the alleged actions of Hazlett and King in canceling Plaintiff's request for an ambulance establish an absence of training and supervision by Moving Defendants.  *Id.* at 11-12.  Plaintiff also maintains Defendants' Motion should not be converted to summary judgment without the court's specifically advising Plaintiff of such possibility.  *Id.* at 12-13.[8]

In further support of their motion, Defendants clarify they do not move in the alternative but, rather, seek both dismissal of, and summary judgment on all claims against Moving Defendants.  Defendants' Reply at 2 & n. 1.  Defendants also argue Plaintiff's reliance on conclusory statements fails to meet her burden to establish municipal liability against Moving Defendants, *id.* at 4-6, and the cases on which Plaintiff relies in support of her negligent hiring, training, and supervision claims pertain to constitutional violations, rather than common law negligence claims.  *Id.* at 7-8.

Plaintiff's Motion for leave to file a further amended complaint does not seek to add any new claims, but factual allegations which Plaintiff argues would create an inference sufficient to impose municipal liability.  Plaintiff's Memorandum at 3-6.  Plaintiff also maintains that Rule 15(a) requires leave to amend be freely given absent a showing of undue delay, bad faith, futility, or prejudice to the moving party.  *Id.* at 2.  In opposition, Defendants argue that with the entry of the April 14, 2011 Scheduling Order, Plaintiff's Motion seeks to amend the scheduling order which, pursuant to Rule 16(b)(4),

---

[8] Plaintiff also argues Defendants' Motion should not be granted insofar as she has asserted claims for relief against Defendants Officers Hazlett and King.  Plaintiff's Response at 9-11.  Defendants, however, have not moved either to dismiss or for summary judgment on the claims against Hazlett and King.  As such, Plaintiff's argument on this ground is not addressed.

requires good cause.  Defendants' Response at 2-4.  Defendants further maintain they would be prejudiced by a grant of leave to amend after the close of discovery.  *Id.* at 4-5.  In further support of her motion, Plaintiff argues she has shown the requisite good cause and diligence to support amending the complaint, Plaintiff's Reply at 2-7, the filing of which will not result in any prejudice to Defendants, *id.* at 7-11, and that the Amended Complaint, as filed, sufficiently pleads Plaintiff's claims to survive Defendants' Motion. *Id.* at 11-12.

Preliminarily, Plaintiff concedes that, as Defendants argue, Defendants' Memorandum at 10, the action should be discontinued as against Defendant Buffalo Police which lacks the capacity to be sued, Plaintiff's Response at 4, and Defendants have observed Plaintiff's concession on this point.  Defendants' Reply at 2, n. 1. Accordingly, the claims should be DISMISSED as against Defendant Buffalo Police. With the dismissal of all claims against Buffalo Police, the court addresses Defendants' Motion only with regard to Defendant City.

Defendants' Motion seeks both dismissal of the Amended Complaint for failing to state a claim for relief against the City, as well as summary judgment of all claims against the City in the absence of any evidence supporting her claims.  A motion for judgment on the pleadings "employ[s] the same standard applicable to dismissals pursuant to [Rule] 12(b)(6)."  *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (bracketed material added).  On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Johnson*, 569

F.3d at 43 (accepting as true all factual allegations in the complaint and drawing all reasonable inferences in plaintiff's favor).  Two recent Supreme Court cases require application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[9]

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at  679).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.  Further, the court is obligated to liberally construe a complaint alleging a § 1983 claim, even though not filed *pro se*. *Leonard Partnership v. Town of Chenango*, 779 F.Supp. 223, 234 (N.D.N.Y. 1991) (construing allegation by plaintiff, represented by counsel, that defendant town denied

---

[9]  Although *Iqbal* and *Twombly* concerned Rule 12(b)(6) motions to dismiss, the Second Circuit Court of Appeals applies the same analysis to Rule 12(c) motions for judgment on the pleadings. *See Johnson*, 569 F.2d at 44 ("To survive a Rule 12(c) motion, [plaintiff's] complaint must contain sufficient factual material, accepted as true, to 'state a claim that is plausible on its face.'" (citing *Iqbal*, 556 U.S. at 678 , and *Twombly*, 550 U.S. at 570)).

building permit as due process violation even though § 1983 was not mentioned in the complaint where such construction did not prejudice town given that defendant itself had construed complaint as based on § 1983 and accordingly addressed claim).

The court initially addresses Defendants' submission of matters outside the pleadings insofar as Defendants seek judgment on the pleadings under Rule 12(c).  By submitting numerous exhibits in support of their motion under Rule 12(c), Defendants essentially request the court to consider matters outside the pleadings.  Significantly, "[i]f, on a motion under Rule 12(b)(6) or (c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Fed.R.Civ.P.] Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed.R.Civ.P. 12(d) (underlining added).  As such, "a district court acts properly in converting a motion for judgment on the pleadings 'into a motion for summary judgment when the motion presents matters outside the pleadings, but the rule requires that the court give sufficient notice to an opposing party and an opportunity for that party to respond.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)).

In the instant case, however, Defendants rely on the extrinsic material not in support of the request for judgment on the pleadings against the City, but only in support of their further request for summary judgment on such claims.  Accordingly, there is no need to convert Defendants' Motion to one seeking only summary judgment. Nevertheless, the dual nature of Defendants' Motion creates a conundrum because if Defendants' Motion is granted in its entirety with regard to the request for dismissal

pursuant to Rule 12(c), then no claims against Defendant City would remain before the court for consideration on summary judgment.  Although the court could construe Defendants' Motion as first seeking dismissal pursuant to Rule 12(c) of the claims against Defendant City, and summary judgment pursuant to Rule 56 on any claims which survive Rule 12(c) analysis, Defendants have specifically asserted they are not moving in the alternative.  Defendants' Reply at 2, n. 1.  Nevertheless, the only rational solution to this procedural novelty is to analyze Defendants' Motion pursuant to Rule 12(c) and, if any claims survive dismissal, pursuant to Rule 56.[10]

Plaintiff's argument that the court may not entertain Defendants' Motion as seeking judgment under Rule 56 without first providing notice of its intent to do so, Plaintiff's Response at 12-13, is based on Plaintiff's misconstruction of Defendants' Motion as requesting the court, as an alternative to dismissing the Amended Complaint against Defendant City for failing to state a claim, convert the motion to summary judgment when, as just discussed, a plain reading of Defendants' papers establishes

---

[10] Although Defendants do not explain why they are moving under both rules, the court observes that judgment on the pleadings generally is not with prejudice, whereas summary judgment is based on a failure of evidence to support the claims and, because summary judgment is with prejudice, the filing of an amended pleading is not permitted.  *Compare Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*, 271 F.3d 374, 385 (2d Cir. 2001) (observing district court may "grant[ ] summary judgment because the plaintiff fails to show evidence capable of proving the elements of the claim . . . ."); and *Dasrath v. Ross University School of Medicine*, 494 Fed.Appx. 177, 177-78 (2d Cir. Sept. 4, 2012) (affirming district court's granting of summary judgment in its entirety and dismissing complaint with prejudice).  Furthermore, Defendants' failure to file a statement of undisputed facts in accordance with Local Rule 56, would not require, as Plaintiff argues, Plaintiff's Response at 2, 13, denying summary judgment.  Rather, Local Rule 56(a)(1)'s provision that "[f]ailure to submit such a statement *may* constitute grounds for denial of the motion," Local Rule 56(a)(1) (italics added), establishes the court has discretion whether to deny a motion for summary judgment based on the movant's failure to submit the statement of undisputed facts called for by the rule.  *See Tota v. Bentley*, 379 Fed.Appx. 31, 33 (2d Cir. May 26, 2010) (holding District Judge did not abuse discretion in granting summary judgment motion where movant failed to file statement pursuant to Local Rule 56 because, *inter alia*, Local Rule 56 "permits – but does not require – the denial of a non-compliant motion for summary judgment (citing *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) (reviewing for "abuse of discretion," and "accord[ing] considerable deference" to, "the district court's interpretation and application of its own local rule.").

otherwise.   Rather, Defendants' Motion clearly indicates it seeks both judgment on the pleadings insofar as the Amended Complaint fails to state a claim against Defendant City for which relief can be granted, as well as summary judgment of the claims against Defendant City in the absence of any evidence establishing a basis for such claims. Plaintiff has therefore received notice of Defendants' Motion seeking summary judgment.

**2.      Claims Against City of Buffalo**

Defendants move for judgment on the pleadings of the claims against Defendant City because Plaintiff has failed to allege sufficient facts to establish municipal liability based on the doctrine of *respondeat superior*, and summary judgment on the same claims based on Plaintiff's inability to produce any evidence of the requisite policy, custom, or practice necessary to hold Defendant City liable for the actions of Defendants Officers Hazlett and King.   Defendants' Motion is made pursuant to Rule 12(c), insofar as dismissal is sought, and pursuant to Rule 56 insofar as summary judgment is requested.   Plaintiff opposes Defendants' motion both by arguing she has sufficiently alleged facts supporting an inference that the alleged constitutional violations were pursuant to an official policy, custom, or practice, and that Defendants' Motion should not be converted to summary judgment.   Alternatively, Plaintiff's Motion to amend seeks to add additional factual allegations to establish municipal liability against Defendant City based on *respondeat superior*.

A.      **Section 1983 Claims**

Section 1983, "allows an action against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Patterson v. County of Oneida*, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983).  Section 1983, however, "'is not itself a source of substantive rights.'" *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'. . . ." *Id.*  The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law.  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Taylor*, 466 U.S. 635, 640 (1980)).

It is settled that municipalities cannot be held liable pursuant to § 1983 on a *respondeat superior* theory.  *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978).  Rather, a plaintiff asserting a § 1983 claim against a municipality must allege the municipality "under color of some official policy, 'cause[d]' an employee to violate another's constitutional rights."  *Id.* at 692.  As such, to hold a municipality "liable under [§] 1983 for the unconstitutional actions of its employees, *a plaintiff is required to plead and prove* three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2009) (internal quotation marks and citation omitted; italics added); *see Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (plaintiff must

prove that "policies or customs that [were] sanctioned" by the municipality led to the alleged constitutional violation. (citing *Monell*, 436 U.S. at 694)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, __ U.S. __, 131 S.Ct. 1350, 1359 (2011) (citing *Monell*, 436 U.S. at 691). "These are 'action[s] for which the municipality is actually responsible.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)). Nevertheless, the "mere assertion" that a municipality maintains a custom or policy, in the absence of supporting allegations, is insufficient to state a claim for municipal liability. *Dwares v. New York*, 985 F.2d 94, 99 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)). "Similarly, the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Id.* In the instant case, Plaintiff has failed to sufficiently allege facts which, if true, could plausibly establish any of these situations.

Although Plaintiff maintains the events of October 21, 2009 represent a persistent or widespread practice of the Buffalo Police so as to constitute a custom of which constructive knowledge may be implied on the part of policy-makers, "to allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. County of Monroe*, 351 Fed.Appx. 543, 545 (2d Cir. Nov. 4, 2009) (citing *Vives v. City*

*of New York*, 524 F.3d 346, 350 (2d Cir. 2008)).  Further, Plaintiff must point to more

than a single episode of alleged constitutional violations, "[a] single incident alleged in a

complaint, especially if it involved only actors below the policymaking level, generally

will not suffice to raise an inference of a custom or policy." *Dwares*, 985 F.2d at 100.

Here, Plaintiff makes no allegation that any official policymaker or policymaking body

took any action to establish any policy pursuant to which the alleged assault of Plaintiff

occurred, or Plaintiff's emergency 911 call requesting medical assistance was canceled.

As such, Plaintiff's threadbare allegations that Officers Hazlett and King acted pursuant

to a "policy," in the absence of any pleaded facts "suggesting the policy's existence," are

"plainly insufficient." *Missell*, 351 Fed.Appx. at 545-46 (citing *Dwares*, 985 F.2d at 100-

02).

Similarly, with regard to the alleged failure to train and supervise, "[a] complaint

states a § 1983 claim against a municipality if it plausibly alleges that a municipal

policymaker was 'knowingly and deliberately indifferent to the possibility that its . . .

officers were wont' to violate constitutional rights." *Missell*, 351 Fed.Appx. at 546

(quoting *Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir. 1986)).  "Such a

complaint must allege that 'the need for more or better supervision . . . was obvious,' but

that the defendant 'made no meaningful attempt' to prevent the constitutional violation."

*Id.* (quoting *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir.

2004) (further quotation marks and citation omitted)).  Furthermore, even if sufficiently

particularized, a single incident on its own is insufficient to allege the existence of an

obvious need for training or supervision.  *See Vann v. City of New York*, 72 F.3d 1040,

1049 (2d Cir. 1995) ("An obvious need may be demonstrated through proof of repeated

complaints of civil rights violations."). Here, Plaintiff has insufficiently alleged facts supporting an inference that Defendant City was on notice of, yet failed to take any action, regarding a Buffalo Police employee's practice of canceling emergency 911 calls for medical assistance. *See Missell*, 351 Fed.Appx. at 546 (affirming district court's dismissal of § 1983 claims based on failure to train or supervise where plaintiff failed to allege facts supporting inference defendants were on notice of defendant sheriff department employee's propensity to abuse and misuse power and authority in conducting unauthorized criminal investigation of next-door neighbor for child predator activity based solely on defendant employee's speculation).

In the instant case, Plaintiff's claims against Defendant City are similarly too conclusory to plausibly support Plaintiff's claims for municipal liability. In particular, Plaintiff, in opposing Defendants' Motion, points to a single allegation in the Amended Complaint in which Plaintiff alleges "based upon information and belief, [Defendant City] had a policy and custom in place that tolerated the use of force during routine investigations of disputes between businesses and customers and other members of the general public." Amended Complaint ¶ 14. Such a "threadbare recitation of legal conclusion" is, however, insufficient to state a claim for municipal liability on a § 1983 claim. *Schnitter v. City of Rochester*, __ Fed.Appx. __, 2014 WL 494893, at *1 and * 3 (2d Cir. Feb. 7, 2014). Nor do any of the additional factual assertions satisfy the pleading standard established by *Twombly* and *Iqbal*.

Rather, the additional factual allegations of the Amended Complaint Plaintiff references in support of her argument for the proposition that Defendant City had a policy or custom tolerating the use of force during routine investigations of business

disputes, Plaintiff's Response at 6-7, and of deliberate indifference to a right to medical attention, *id*. at 7-9, merely relate the events of which Plaintiff complains.  Significantly, no allegation of the Amended Complaint provides any factual basis for imputing the alleged unconstitutional conduct of Officers Hazlett and King to Defendant City.

Nor is there any merit to Plaintiff's argument that Defendants, by way of their motion, are seeking to impose a heightened pleading requirement on Plaintiff which, under *Monell v. Dep't of Social Services*, 436 U.S. 658 690 (1978) ("*Monell*"), does not apply to § 1983 claims asserted against municipalities.  Plaintiff's Reply at 11-12.  In support of this argument, Plaintiff relies on Fed.R.Civ.P. 8(a)(2)'s provision that "[a] pleading that states a claim for relief must contain: * * * (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." *Id*. at 11.  As such, Rule 8(a)(2) "'do[es not require a claimant to set out in detail the facts upon which he bases his claim.'" *Id*. (quoting *Ambrose v. City of New York*, 623 F.Supp. 454, 463 (S.D.N.Y. 2003)).  Accordingly, Plaintiff maintains that her factual allegation that Defendant City "'has a policy and customer [*sic*] in place that tolerated the use of force during routine investigations of disputes between businesses and customers and other members of the general public,'" *id*. at 12 (quoting Amended Complaint ¶ 14), sufficiently pleads a claim for § 1983 relief pursuant to *Monell*.  *Id*. at 12.  Defendants, however, do not seek to impose a heightened pleading requirement on Plaintiff's municipal liability claims; rather Defendants merely insist Plaintiff comply with the pleadings requirements established by *Monell* as applicable to Plaintiff's federal claims.

Accordingly, Defendants' Motion should be GRANTED as to Plaintiff's § 1983 claims against Defendant City for failure to state a claim.

B.      **State Law Claims**

Insofar as Plaintiff also asserts state common law claims against Defendant City

for negligent hiring, training, and supervision, Amended Complaint, Fourth Claim,

battery, *id.*, Fifth Claim, and false arrest/false imprisonment, *id.*, Sixth Claim,

Defendants have specifically moved to dismiss the common law claims for negligent

hiring, training and supervision, but have not similarly moved with regard to the common

law claims for battery and false arrest/false imprisonment.  With regard to the negligent

hiring, training, and supervision claims, Defendants assert that because Plaintiff alleges

Officers Hazlett and King engaged in the underlying conduct while acting within the

scope of their employment, rather than outside their scope of employment, the

employer, *i.e.*, City of Buffalo, may be held liable for the employee's torts under

*respondeat superior*, and no claim under New York law lies against the municipal

employer for negligent hiring, training or supervision.  Defendants' Memorandum at 9.

Plaintiff's argument in opposition does not address her common law negligent hiring,

training, and supervision claims but is limited to her common law battery and false

arrest/false imprisonment claims.  Plaintiff's Response at 9-11.  In further support of

their motion, Defendants reiterate only that Plaintiff's common law negligent hiring,

training, and supervision claims are barred under New York law.  Defendants' Reply at

7-8.

With regard to Plaintiff's common law battery and false arrest/false imprisonment

claims, no municipal custom or policy need be proven "for '[m]unicipalities surrendered

their common-law tort immunity for the misfeasance of their officers and employees long

ago.'"  *Lore v. City of Syracuse*, 670 F.3d 127, 168 (2d Cir. 2012) (quoting *Tango v.*

*Tulevech*, 459 N.E.2d 182, 185 (N.Y. 1983)).  *See Ackerson v. City of White Plains*, 702

F.3d 15, 22 (2d Cir. 2012) (holding successful state common law false arrest claim

against defendant municipal police officer created liability against municipality under

*respondeat superior* theory); *Woods v. Town of Cheektowaga*, 2012 WL 5288767, at * 7

(W.D.N.Y. Oct. 23, 2012) ("'unlike a claim pursuant to 42 U.S.C. § 1983, a municipality

may be vicariously liable on a state law assault and battery claim for torts committed by

a police officer under a theory of respondeat superior.'" (quoting *Eckardt v. City of White*

*Plains*, 930 N.Y.S.2d 22, 25 (2d Dep't 2011))).  As such, Plaintiff's state common law

claims for battery and false arrest/false imprisonment are "'alive due to the potential for

vicarious liability for actions of its police officers as its employees.'"  *Woods*, 2012 WL

5288767, at * 7 (quoting *Williams v. City of White Plains*, 718 F.Supp.2d 374, 381

(S.D.N.Y. 2010)).

　　　In contrast, although "[g]enerally, under New York law, 'an employer will be held

liable for torts committed by an employee who is acting within the scope of his or her

employment under a theory of respondeat superior, and 'no claim may proceed against

the employer for negligent hiring, retention, supervision or training,'" *Woods*, 2012 WL

5288767, at * 8 (quoting *Eckardt*, 930 N.Y.S.2d at 25), where "'the actions complained

of occurred during the arrest and detention of the plaintiff by several police officers, . . .

[i]t is beyond dispute that these actions were performed by the officers in the scope of

their employment with the [municipality].'"  *Id.*  Here, although Plaintiff denies being

formally arrested, a reasonable jury could find, based on the circumstances and

Defendants' conduct as alleged by Plaintiff, that Plaintiff did not feel free to leave but

was, in fact, arrested.  Further, because Plaintiff has not alleged gross negligence on the part of the City, no exception applies.  *Id.* (citing cases).

Accordingly, judgment on the pleadings should not be granted as to Plaintiff's common law claims for battery and false arrest/false imprisonment against Defendant City, but should be granted as to Plaintiff's common law claims for negligent hiring, training and supervision.

### 3.    Leave to Amend

In the instant case, Plaintiff has moved for leave to file a further amended complaint asserting no new claims for relief, but only additional factual allegations Plaintiff asserts will establish the requisite inferences for imposing liability on Defendant City.  Plaintiff's Memorandum at 3-4.  Defendants oppose the motion as improperly made pursuant to Fed.R.Civ.P. 15(a) ("Rule 15(a)"), rather than Fed.R.Civ.P. 16(b) ("Rule 16(b)"), which requires a showing of good cause to amend the scheduling order to permit the late filing of an amended complaint, Defendants' Response at 2-4, and that Defendants would be prejudiced should Plaintiff be permitted to file the further amended complaint, given that discovery has closed.  *Id.* at 4-5.  In further support of her motion, Plaintiff asserts that in deciding whether to grant a motion to amend filed after the court-ordered deadline for filing amended pleadings, the "court must balance the requirements of Rules 15(a) and 16(b) . . . ."  Plaintiff's Reply at 2-3.  Plaintiff further asserts the circumstances of the action establish the requisite "good cause" to further amend the complaint, *id.* at 2-6, and that the filing of the proposed amended complaint will not result in any prejudice to Defendants.  *Id.* at 6-11.

Generally, a motion for judgment on the pleadings is without prejudice to the filing of an amended complaint, particularly where it is conceivable that the plaintiff may be able to file an amended complaint articulating facts stating a plausible claim for relief. Although generally, the granting of a motion to dismiss for failure to state a claim is without prejudice to the plaintiff filing an amended complaint curing the defects of the dismissed complaint, leave to amend need not be allowed where it would be futile. *See Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 91-92 (2d Cir. 2003) (noting "it is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint . . . " but such leave was unnecessary where further amendment to the complaint would be futile). Here, regardless of whether amendment of the complaint is considered pursuant to Plaintiff's Motion for leave to do so, or based on the court's recommendation that Defendants' Motion be granted insofar as Defendants seek judgment on the pleadings dismissing certain claims for relief, the proposed amended complaint Plaintiff filed in support of her motion to amend establishes that amendment would be futile because the propose amended complaint does not sufficiently articulate the requisite facts necessary to establish claims for § 1983 relief against Defendant City based on *Monell.*

Preliminarily, the court holds that insofar as Plaintiff moves for permission to file a further amended complaint, although a motion to amend a complaint brought pursuant to Fed.R.Civ.P.15(a) provides that leave to file an amended complaint "shall be freely given," this "lenient" standard "must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Construction*, 318 F.3d 80, 86 (2d Cir. 2003)

(quoting Fed. R. Civ. P. 15(a) and 16(b)).  S*ee Carnrite v. Granada Hospital Group, Inc.*, 175 F.R.D. 439, 447 (W.D.N.Y. 1997) (a Rule 16(b) scheduling order "shall not be modified except upon a showing of good cause").   As such, once the April 14, 2011 Scheduling Order (Doc. No. 11), was issued, the deadlines set in such order, including that motions to amend the pleadings be filed by June 30, 2011, could not be amended absent good cause to amend.  Here, Plaintiff's Motion can be denied both for lack of "good cause" to amend the Scheduling Order to permit filing a further amended complaint, as well as on the basis of futility.

"A finding of good cause depends on the diligence of the moving party." *Grochowski*, 318 F.3d at 86 (citing *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340-41 (2d Cir. 2000) (refusing to find good cause for late notice to amend where pleadings established plaintiff was in possession of the information necessary to assert new claim prior to expiration of scheduling order's deadline for motions to amend)).  In *Grochowski*, the Second Circuit affirmed the district court's denial of the plaintiffs' motion to amend the pleadings where the plaintiffs had delayed more than one year before seeking to amend, during which discovery had been completed and a summary judgment motion was filed by the defendant.  *Grochowski*, 318 F.3d at 86.  Similarly, in the instant case, given that the deadline for moving to amend the pleadings expiring on June 30, 2011, Plaintiff delayed more than nineteen months before filing her motion on February 4, 2013, during which time discovery closed on June 15, 2012, and Defendants filed the instant dispositive motion.  Accordingly, Plaintiff cannot establish the requisite diligence to further amend the pleadings under Rule 16(b).  *Grochowski*, 318 F.3d at 86.  Moreover, even if Plaintiff could meet Rule 16(b)'s diligence

requirement, the proposed amended complaint establishes the new facts Plaintiff seeks to allege would be futile.

Where a requested pleading amendment is futile, "it is not an abuse of discretion to deny leave to amend" to the moving party. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993). *See also Kodak Graphic Communications Canada Co. v. E.I. DuPont de Nemours and Company*, 2011 WL 6826650, at ** 4-5 (W.D.N.Y. Dec. 28, 2011) (denying under Rule 16(b) motion to file amended complaint for failure to establish good cause for, and futility of proposed amendment).  A determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under Rule 12(b)(6).  *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 160 F.Supp.2d 657, 666 (S.D.N.Y.2001).  An amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground."  *Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir.1999).

In particular, the undersigned's recommendation that judgment on the pleadings be granted dismissing certain claims as against Defendant City is based on Plaintiff's failure to establish the City maintained a municipal custom or policy pursuant to which Plaintiff sustained her alleged injuries, and the mere assertion of such a custom or policy is insufficient to sustain that burden.  Discussion, *supra*, at 17-21.  None of the additional facts Plaintiff seeks to allege, however, would, if established, support such a custom or policy; rather, the additional fact Plaintiff proposes would, at best, provide further evidence of wrongdoing by Officers Hazlett and King.

For example, Plaintiff seeks to allege that Defendant City maintained, but failed to follow, an official policy for investigating claims of excessive force by police officers involving business disputes.  Proposed Second Amended Complaint ¶¶ 35-38.  Even if true, these facts would not tend to establish the City maintained a custom or policy of not following its standard investigation policy.  Nor are Plaintiff's proposed factual allegations that "Defendant Hazlett's excessive use of force and Defendant King's acquiescence in same is [*sic*] indicative of an unwritten policy and custom of Defendant City of Buffalo," *id.* ¶ 65, anything more than a bald and conclusory statement that is insufficient to establish municipal liability.  *See Cobbs v. City of Newburgh – City Council*, __ Fed.Appx., __, 2013 WI 6170247, at * 2 (2d Cir. Nov. 26, 2013) (holding conclusory allegations insufficient to hold municipal defendant liable under theory of *respondeat superior*).  Accordingly, permitting Plaintiff to file the Proposed Second Amended Complaint will not cure the deficiencies in the Second Amended Complaint with regard to the claims for municipal liability against Defendant City, and Plaintiff's Motion is, therefore, DENIED.

Nevertheless, insofar as Plaintiff's maintains she seeks to assert in the Second Amended Complaint no new claims for relief, but only additional facts to clarify the events on which her claims for relief are based, at a trial on these claims, Plaintiff would be permitted to introduce evidence of these allegations to establish the alleged claims for relief.  As such, there is no need to amend the pleadings to include these assertions.

## **CONCLUSION**

Based on the foregoing, the claims against Defendant Buffalo Police should, based on Plaintiff's concession, be DISMISSED; Defendants' Motion (Doc. No. 28), should be GRANTED insofar as it seeks judgment on the pleadings, and be DISMISSED as moot insofar as it seeks summary judgment; Plaintiff's Motion (Doc. No. 31) is DENIED.

Respectfully submitted, as to Plaintiff's concession that the claims against Defendant Buffalo Police be dismissed and as to Defendants' Motion,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

SO ORDERED, as to Plaintiff's Motion,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 18, 2014
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 18, 2014
            Buffalo, New York